PETERSBURG RAILROAD COMPANY

*v.*

BURTONS.

(*Special Court of Appeals of Virginia, July, 1881.*)

[Virginia Law Journal, 1881, p. 460.]

Land Dedicated as a Street—Interest of Public in—Fee Simple in Abutting Owners.*

Where ground in a city is dedicated as a street, the public take only an easement or usufruct in the same for the ordinary purposes of travel, the fee simple remains in the owners of the lots fronting on the street, each owner holding to the centre; and this is so, whether the present owners, or those from whom they purchased, received any compensation for the easement or usufruct or not.

Right of Legislature to Divest Owners of Fee—Quære.

*Quære*: Can the legislature divest the lot owners of the fee, and can the state, by the right of eminent domain, acquire more than the easement or usufruct?

Streets—Abutting Owners—Right to Compensation for Laying Railroad Track in Street.

The owners of a lot situated on a public street of a city, can recover damages for special injury done to their property by the use and occupancy of such street by a railroad company without their consent, although such use and occupancy may be with the consent of the corporate authorities of said city.

This was a writ of error and supersedeas to a judgment of the circuit court of the city of Petersburg. The facts of the case are sufficiently set forth in the opinion of the court.

---

*See monographic note on "Municipal Corporations" appended to Danville *v.* Page, 25 Gratt. 1 (Va. Rep. Anno.).

*John Lyon*, for the plaintiff in error.

*Mann & Stringfellow*, for the defendants in error.

McLAUGHLIN, J., delivered the opinion of the court.

In October, 1867, Jessee W. and Abraham Burton instituted an action of trespass on the case in the circuit court of Petersburg, against the Petersburg Railroad Company to recover damages for injury to their storehouse, situated on River street, a public street and common highway, in the city of Petersburg, caused by laying down and using a branch track of their railroad along said street in close proximity to plaintiffs' storehouse, and within three feet of the southeastern corner of said storehouse. The declaration alleged heavy special damages to the property of the plaintiffs from the occupation of the street for the purpose and the use of the said branch track, and claimed $7,500 damages. The defendant appeared at the next term of the circuit court and pleaded "not guilty," upon which issue was joined. The case was continued, from term to term, until the second day of December, 1870, when the issue was submitted to a jury, who found a verdict for the plaintiffs and assessed their damages at $750. The defendant then moved the court to set aside the verdict and grant a new trial upon the ground that the verdict was contrary to the law and evidence ; but the court overruled the motion and entered judgment upon the verdict. The defendant excepted to the opinion of the court overruling the motion for a new trial, and tendered its bill of exceptions, embodying the facts proved upon the trial. From this judgment a writ of error has been allowed, which is now to be considered.

From the bill of exceptions the following facts appear : That the plaintiffs were the owners and occupants of a brick storehouse, covered with slate, situated on the north side of

River street, a public street in the city of Petersburg ; that the defendant was a joint stock company, duly incorporated and organized with certain powers and rights prescribed and defined by the acts of the general assembly of Virginia ; that on the 17th day of August, 1866, the common council of the city of Petersburg adopted the following resolutions :

"Resolved, That the Petersburg Railroad Company, under the supervision of the street committee, are hereby authorized to lay down a track upon or near the track that was laid down during the war from their depot—on the corner of Washington and Union streets, to a point near the gas works, and from thence a track or tracks. may be extended to the wharves on Appomattox river. A track may also be extended along the wharves belonging to the city, at such distances from the edge of the river as may be most convenient for trains shipping freight to and from cars and vessels. This track may be removed to a more permanent and better location whenever such location shall be decided upon by the Petersburg Railroad Company and approved by the city council.

"Resolved, further, That under the supervision of the committee on public property, a suitable platform and shed for the protection of freights may be made upon the wharf belonging to the city, and that the platform and shed may be removed at the same time the track is removed."

That in the month of June, 1867, the said defendant, under the supervision and with the assent and approbation of the proper authorities of said city, did construct in a proper and lawful manner a siding or branch of the said railroad upon River street, in said city, immediately opposite to the storehouse of the plaintiffs, in the manner indicated upon the map or plat produced upon the trial. Respecting the measure of damages, the testimony was conflicting, some tending to prove that the plaintiffs' storehouse was greatly

benefited, and some to prove it was greatly injured; but the parties, by counsel, agreed that the facts touching this point need not be certified, and that it may be assumed, for the purposes of appeal, that the damages assessed by the jury are not excessive, it being their wish to submit to the judgment of the appellate court the simple question, whether, upon the facts certified, the defendant can be lawfully held liable to the plaintiffs for any damage whatever.

It will thus be seen that the only question to be determined and passed upon by this court in this case is whether the owner of property, situated upon a public street in a town or city and dedicated to public uses as a highway, can recover damages for special injury done to his property by the use and occupancy of such highway by a railroad company.

It does not appear when this street was dedicated to public uses, but it may be fairly inferred that it was many years ago, and that the public only took an easement, a usufruct, in the street to be used for the ordinary purposes of travel. The fee simple thus remained in the owners of the lots fronting on the street, each owner holding to the middle of the street. It does not appear whether the plaintiffs or those from whom they purchased received any compensation for the land known as River street, in front of their lot, nor is it material. It is not pretended that they consented to the construction of said track, or received compensation for the privilege granted to the appellant to construct the same. That the plaintiffs owned to the centre of the street in front of their lot, seems clear. Chancellor Kent, in his Commentaries, 3rd vol., page 433, says: "The law with respect to public highways and to fresh water rivers is the same, and the analogy perfect as concerns the right of soil. The presumption is, that the owners of the land on each side go to the centre of the road, and they have the exclusive right to the soil, subject to the right of passage in the public. Being

owners of the soil, they have a right to all ordinary reme-
dies for the freehold.    They may maintain an action of eject-
ment for encroachments upon the road, an assize if disseized
of it, or trespass against any person who digs up the soil
of it, or cuts down any trees growing on the side of the road
and left there for shade or ornament.    The freehold and prof-
its belong to the owners of the adjoining lands.    They may
carry water in pipes under the highway, and have every use
and remedy that is consistent with the servitude or easement
of a way over it, and with police regulations."    In Dovaston
v. Payne, 2 Smith's Leading Cases, p. 142, it is said,
"the property of a highway is in the owner of the soil sub-
ject to an easement for the benefit of the public."    So in The
People v. Law, 34 Barbour, 494, the court held that where
premises are conveyed by deed and bounded in general
terms by a street, the grant extends to the middle of the
street, and this whether the land be situated in the country
or a city.    In either case the owners of the lands adjoining
the street have the entire property in the land subject to the
public easement and rights in the street.    Accordingly,
the adjacent proprietors having the title to the centre of the
street, subject to the public easement, they have a right of
property in the streets which the courts are bound to pro-
tect, and which cannot be taken from the owners except for
public use and upon full compensation.

The dedication or laying out of a street within a corpora-
tion does not affect the ownership of the soil, and however
enlarged the easement may be when within the limits of a
corporation in order to the beneficial use of it, and to effect
the purposes intended when the easement was created, sub-
ject to such use, whether enlarged or limited, the title remains
in the owner.    Notwithstanding the easement, the owner
retains many and valuable interests.    Warwick & Barksdale
v. Mayo, Mayor, 15 Gratt. 545.    Indeed, it has been

doubted whether the legislature could divest the owner of the fee, and whether, by the right of eminent domain, the state could take more than the usufruct. 2 Smith's Leading Cases, 239. Bolling v. Mayor, &c., 3 Rand. 575.

It appears from the map that the track in this case was constructed in immediate proximity to plaintiffs' warehouse and upon the street, the fee in which was invested in them. It must have seriously affected the plaintiffs in the enjoyment of their property. It interfered with the loading and unloading of vehicles at their warehouse, with the free and uninterrupted passage across the street, and endangered their house, although it may have been covered with slate.

In the case of Williams v. New York Central Railroad Company, 16 New York 97, very similar to this, it was held that "the dedication of land to the use of the public as a highway does not preclude the owner of the fee, subject to the public easement, from maintaining an action against a railroad company, which, without his consent or an appraisal of his damages, enters upon and occupies such highway with the track of its road."

Such an appropriation of the highway by the railroad company is the imposition of an additional burden upon, and a taking of the property of, the owner of the fee, within the meaning of the constitutional provision which forbids such taking without compensation. The company can therefore derive no title under acts of the legislature, and the license or consent to a use, inconsistent with the public easement, of municipal or other authorities who represent the public as to such right, without the consent of the owner of the fee or the appraisal and payment of his damages in the mode provided by law.

In The People v. Law, 34 Barb. 502, Judge Hogeboom says the plaintiffs "having title to the centre of the street,

subject only to the public easement, they have a right of property in the street which the courts are bound to protect."

In Yates v. Ohio and Mississippi Railroad, 7 Porter's Indiana Reports, 479, it was held that the right which the owner of a lot has to the enjoyment of an adjoining street, is part of his property, and can only be taken for public use, on just compensation being made pursuant to the constitution.   Accord Haynes v. Thomas, Ibid. 38.

In the case of Knox v. The Mayor, 55 Barbour 405, these principles are applied even to a lessee.   Judge Daniel (p. . 413) says that it was not within the power of the common council or the legislature, or both combined, to deprive the defendant of his rights, unless the measures for doing so were in conformity to its requirements.

Those measures could only be effectual which would provide compensation for the property taken.   This was the case of an alleged public nuisance, claimed by the plaintiff to be specially injurious to him.   The alleged nuisance was a bridge across Broadway in the city of New York.   Accord Heath v. Burnam, 48 Barb. 498, and Troy Union Railroad v. Wager, 25 New York 532.

The case of The People v. Kerr, 37 Barbour 389 is in seeming conflict with the cases we have reviewed.   But while it is conceded in that case that a railroad is a special use not embraced in the notion of a highway, yet the case turned upon the point that in New York city the fee in the streets is vested in the corporation which had granted the privilege.

I have also been informed that in the case of Toebbe Bishop v. The Louisville, Cincinnati & Lexington Railroad Company, and Welch v. Same, the supreme court of Kentucky has recently held that the owners of lots in Newport on a street are not entitled to damages for special injuries.

I have not seen the opinion, but have been favored with the argument of the counsel for the railroad company, and he bases his case upon the ground that, by the law of Kentucky, the corporation acquired the fee simple in the property, and I understand that the same view was taken by the court. It will thus be seen that the refusal to award damages rests upon the same ground as in the case of the People v. Kerr, *supra.*

Judge Redfield, in his admirable treatise on Railways, says : "In some of the early cases upon this subject, it seems to have been considered that under such circumstances the land owners were entitled to additional compensation when the land was converted from a common carriage-way to a railway. There is certainly great reason in this view, inasmuch as the land owner's entire damage is to be assessed at once, and it could never be done understandingly unless the use to which it was to be put was known to the assessors, and that it would ordinarily be attended with far more danger to the remaining land to have a railway than a common highway laid across it."

After citing and reviewing all the authorities on this subject, *pro* and *con*, he concludes as follows : "The present inclination seems to be to make no distinction between the use of streets by steam and street railways, and to require compensation in both cases alike. There are some few cases in different states which still adhere to the doctrine that the laying of a railway track for the passage of a street railway, at the ordinary grade of the highway, is not the appropriation of any estate in the land to public use beyond that already appropriated by devoting the land to the use of a highway or street. And there is an elaborate opinion by Mr. Justice Ellsworth, of the Connecticut superior court, where the same views are maintained ; and, as it seems to

us, with more plausibility than any case we have found in the opposite direction.''

''It seems very certain,'' he continues, ''that the grant to a railway company of the right to pass along the streets of a city or town can confer no authority to erect stations and other permanent structures in the streets, and thereby render them unfit for use as streets.   In such cases the adjoining owners will be entitled to redress by way of damages, whether they are to the middle line of the street or only to the margin.''

And Judge Cooley, in his work on Constitutional Limitations, after citing numerous cases, says :    ''It would appear from the cases cited that the weight of judicial authority is against the power of the legislature to appropriate a common highway to the purposes of a railroad, unless, at the same time, provision is made for compensation to the owner of the fee.''

From a careful review of all the authorities upon this question, I am of the opinion that the preponderance is strongly in favor of the doctrine that when a railroad company invades the street of a city or town, even with the permission of the authorities of such city or town, and the fee simple to the street remains in the adjoining lot holders, and the proprietors of such lots sustain special damage for such invasion, as in this case, they are entitled to recover therefor.    I think this doctrine is sustained by reason as well as authority.   It can hardly be supposed that when a lot holder dedicated a part of his lot to a public street, to be used as a common highway, he contemplated that it would be occupied and used by a railroad company for its track, thus interfering with the loading and unloading of vehicles, impeding free access across the street, endangering the building by passing engines, and imperilling the lives of those who sought to use the street for the purposes originally con-

templated.    The verdict of the jury finding the damages is not questioned in this court, and must be taken as correct.

I am therefore of opinion that there is no error in the judgment of the circuit court of Petersburg, and that the same ought to be affirmed.

WINGFIELD, P., and BARTON, J., concurred.

Judgment affirmed.